**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| BBCN Bank, | ) | No. 14-cv-07737 |
| Plaintiff, | ) | |
| | ) | Assigned Judge: Honorable Virginia M. Kendall |
| v. | ) | Property:   2411-2425 Grand Avenue |
| | ) |                   Waukegan, IL 60085 |
| JES Properties Inc., Jung Kak Suh | ) | |
| Unknown Owners, Unknown Tenants, and | ) | **Commercial** |
| Non-record Claimants | ) | |
| | ) | |
| Defendant(s) | ) | |

---

**BBCN BANK'S MOTION**
**FOR CONFIRMATION OF DEFICIENCY JUDGEMENT**

Plaintiff, BBCN Bank (herein "Plaintiff"), by and through its attorneys, Ashen|Faulkner, hereby requests this Court to enter an order pursuant to 735 ILCS 5/15-1511 confirming a deficiency judgment and entering a Memorandum of Judgment, and in support thereof states as follows:

1.      On or about October 3, 2014, Plaintiff filed its Complaint to Foreclose Mortgage and for Other Relief, seeking to foreclose the Mortgage (herein "Mortgage") that it holds on the property commonly known as 2411-2425 Grand Avenue, Waukegan, IL 60085 (herein "Property"). The Mortgage secures a note from JES Properties Inc. (herein "Borrower") in favor of Plaintiff in the original amount of $1,880,900.00.  A true and correct copy of the Complaint is attached hereto as "**Exhibit A**."

2.      Defendants Jung Kak Suh and JES Properties Inc. (herein "Defendants"), were served on October 17, 2014.  True and correct copies of the affidavits of service are attached hereto as "**Exhibit B**."

3.      As demonstrated by the affidavit of service, Jung Kak Suh was served personally.

4.     On or about January 27, 2015 Plaintiff appeared before this Court to present its Motion for Default Judgment and Judgment of Foreclosure.  Defendants failed to appear and Plaintiff's Motion was granted.

5.     Thereafter, Defendants filed an appearance through counsel and moved to set aside Plaintiff's Judgment of Foreclosure.

6.     After briefing Defendants' Motion to Vacate, on or about April 9, 2015, this Court entered an Amended Judgment of Foreclosure and Sale in favor of Plaintiff in the amount of $2,239,725.23.  A true and correct copy of the April 9, 2015 judgment is attached hereto as "**Exhibit C**."

7.     Subsequent to the entry of the Judgment, a third party purchased the Property at short sale, but as a condition to approving the short sale, Plaintiff reserved its right to pursue a deficiency.  The short sale approval letter dated May 21, 2015, executed by Jung Kak Suh and JES Properties Inc., expressly reserves Plaintiff's right to request a deficiency judgment.  A true and correct copy of the Short Sale Approval Letter is attached hereto as "**Exhibit D.**"

8.     The short sale closed on May 28, 2015, and on that same day, Plaintiff received payment toward the judgment in the amount of $1,004,969.52.   A true and correct copy of the HUD is attached hereto as "**Exhibit E.**"

9.     The proceeds from the short sale have been applied to the judgment, and there remains due and owing to Plaintiff:

|  |  |
|---|---|
| Judgment Amount: | $2,239,725.23 |
| Sale Amount: | $1,004,969.52 |
| Remaining deficiency: | $1,234,755.71 |

10.     Pursuant to the judgment entered by this Court, Plaintiff has a right to enforce the deficiency judgment, and Plaintiff now seeks to enforce the deficiency judgment.

11.     An affidavit of Alexander Wright is attached hereto as "**Exhibit F**" which demonstrates that Plaintiff was unable to locate any record of any bankruptcy filing by Jung Kak Suh or JES Properties Inc.

**WHEREFORE**, Plaintiff, BBCN Bank, requests this Honorable Court to confirm a deficiency Judgment and to enter a Memorandum of Judgment in the amount of $1,234,755.71 against JES Properties Inc. and Jung Kak Suh, and further grant such other relief as this court deems just and reasonable.

Respectfully submitted,

/S/Alexander Wright
**Alexander N. Wright**
Attorney for BBCN Bank

Ashen|Faulkner
217 N. Jefferson St., Suite 601
Chicago, Illinois 60661
312.655.0800 / Atty No.: 6314304

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BBCN Bank, | ) | No. |
| Plaintiff, | ) | |
| | ) | Assigned Judge: |
| | ) | |
| v. | ) | Magistrate Judge: |
| | ) | |
| | ) | Property: 2411-2425 Grand Avenue |
| | ) | Waukegan, IL 60085 |
| JES Properties Inc., Jung Kak Suh | ) | |
| Unknown Owners, Unknown Tenants, and | ) | Commercial |
| Non-record Claimants | ) | |
| | ) | |
| Defendant(s) | ) | |

### COMPLAINT TO FORECLOSE
### MORTGAGE AND FOR OTHER RELIEF

Now comes plaintiff, BBCN Bank (hereinafter "Plaintiff"), by its attorneys, Ashen│Faulkner, and complains of the defendants, JES Properties Inc., Jung Kak Suh, Unknown Owners, Unknown Tenants, and Non-record Claimants, and states as follows:

### JURISDICTION & VENUE

1.      This Court has original subject matter jurisdiction in the above-captioned case pursuant to 28 U.S.C. 1332(a) because the matter in controversy is between citizens of different states and the damages claimed exceed the sum of $75,000.00, exclusive of interests and costs.

2.      This Court has personal jurisdiction over each Defendant pursuant to 735 ILCS 5/2-209(a) and (b).

3.      Venue is proper in this district pursuant to 28 U.S.C. 1391(b).

Case
14-cv-07737

Exhibit
A

## THE PARTIES AND FACTUAL BACKGROUND

4.    BBCN Bank is a California-state chartered banking association, the main office of which is located in the State of California and organized under the laws of the State of Delaware.

5.    Jung Kak Suh, on information and belief, is a citizen of the State of Illinois and was at all times referenced in this Complaint a resident of the State of Illinois.

6.    JES Properties, Inc., is an Illinois Corporation.

## COUNT I – MORTGAGE FORECLOSURE

7.    Plaintiff files this Complaint to foreclose the mortgage (hereinafter called "Mortgage"), and joins the following persons as defendants: JES Properties, Inc., Jung Kak Suh, Unknown Owners, Unknown Tenants, and Non-record Claimants (hereinafter collectively "Defendants").

8.    Attached as **"Exhibit A"** is a copy of the Mortgage; **"Exhibit B"** is a copy of the Note (herein "Note").

9.    Information concerning Mortgage:

      a.  Nature of instrument:      Mortgage

      b.  Date of mortgage:      February 23, 2012

      c.  Name of mortgagor(s):      JES Properties, Inc.

      d.  Name of mortgagee:      BBCN Bank

      e.  Date and place of recording:      March 14, 2012 with the Lake County Recorder of Deeds.

      f.  Identification of recording:      Document No: 6830076

      g.  Interest subject to mortgage:      100% fee simple

      h.  Amount of original indebtedness, including subsequent advances made under mortgage: $1,880,900.00

i. Both the legal description of mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:

Legal Description:

LOT 1 IN MUELLER'S RESUBDIVISION OF BLOCK 7 IN DOUGLAS NURSERY ADDITION, BEING A RESUBDIVISION IN THE NORTHWEST 1/4 OF SECTION 20, TOWNSHIP 45 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED AUGUST 4, 2004 AS DOCUMENT 5616365 IN THE OFFICE OF THE RECORDER OF DEEDS, IN LAKE COUNTY, CITY OF WAUKEGAN, ILLINOIS. **EXCEPT** THE FOLLOWING

THE NORTH 125 FEET OF THE WEST 125 FEET OF LOT 1 IN MUELLER'S RESUBDIVISION OF PART OF BLOCK 7 IN DOUGLAS NURSERY ADDITON, BEING A SUBDIVISION OF THE NORTHWEST QUARTER OF SECTION 20, TOWNSHIP 45 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT OF RESUBDIVISION RECORDED AUGUST 4, 2004 AS DOCUMENT NUMBER 5616365, IN LAKE COUNTY, ILLINOIS. **ALSO EXCEPT**

THAT PART OF LOT 1 IN MUELLER'S RESUBDIVISION, OF BLOCK 7 IN DOUGLAS NURSERY ADDITION, BEING A RESUBDIVISION IN THE NORTHWEST 1/4 OF SECTION 20, TOWNSHIP 45 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED AUGUST 4, 2004 AS DOCUMENT 5616365 IN THE OFFICE OF THE RECORDER OF DEEDS BOUNDED BY A LINE DESCRIBED AS FOLLOWS TO-WIT; COMMENCING AT THE SOUTHEAST CORNER OF SAID LOT 1 AS THE PLACE OF BEGINNING; THENCE SOUTH 89 DEGREES, 59 MINUTES 32 SECONDS WEST ALONG THE SOUTH LINE OF SAID LOT 1, A DISTANCE OF 209.26 FEET; THENCE NORTH 00 DEGREES 00 SECONDS EAST, ALONG THE EAST FACE OF THE EXISTING BUILDING, A DISTANCE OF 330.27 FEET, TO THE NORTH LINE OF SAID LOT 1; THENCE NORTH 90 DEGREES 00 MINUTES EAST, ALONG THE NORTH LINE OF SAID LOT 1, A DISTANCE OF 90.48 FEET, TO THE NORTHEAST CORNER OF SAID LOT 1; THENCE SOUTHERLY AND EASTERLY ALONG THE EASTERLY LINE OF SAID LOT 1, BEING A CURVED LINE HAVING A RADIUS OF 465.55 FEET AND BEING CONCAVE NORTHEASTERLY, A DISTANCE OF 278.9 FEET (RECORD) 279.34 FEET (MEASURE) TO A POINT OF REVERSE CURVATURE; THENCE SOUTHERLY AND WESTERLY, ALONG THE EASTERLY LINE OF SAID LOT 1, BEING A CURVED LINE HAVING A RADIUS OF 405.55 FEET AND BEING CONCAVE SOUTHWESTERLY, A DISTANCE OF 76.6 FEET (RECORD) 76.87 FEET (MEASURE) TO THE SOUTHEAST CORNER OF SAID LOT 1 AND PLACE OF BEGINNING, ALL IN THE CITY OF WAUKEGAN, LAKE COUNTY, ILLINOIS.

Commonly Known As:     2411-2425 Grand Avenue, Waukegan, IL 60085

Permanent Identification No.:   08-20-101-025

j. Statements as to default:

    Date of Default:                                   April 23, 2014
    Amount past due as of September 18, 2014:   $64,047.95

k. Statement as to unpaid principal, interest, other charges and total accelerated amount due as of September 17, 2014:  $1,891,444.54

l. Statement as to per diem interest accruing under mortgage after default: $327.20

m. Name of present owner of the real estate: JES Properties, Inc.

n. Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated:

- Jung Kak Suh;
- Unknown Owners, Unknown Tenants and Non-record Claimants.

o. Capacity in which plaintiff brings this foreclosure:

Plaintiff is the legal holder of the Mortgage and Note.

p. Facts in support of request for attorneys' fees and of costs and expenses:

Pursuant to the Mortgage, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in the Mortgage, including all reasonable attorneys' fees and costs.

q. The names of defendants whose rights to possess the mortgaged real estate after the confirmation of a foreclosure sale is sought to be terminated:

JES Properties, Inc. and Jung Kak Suh

r. Facts in Support of a shortened redemption period; or that the right of redemption was waived:  N/A

s. Facts in Support of a shortened reinstatement period; or that the right of reinstatement was waived:  N/A

t.   Facts in support of a request for appointment of mortgagee in possession or appointment of a receiver:

Plaintiff reserves its right pursuant to the Mortgage to be placed as a mortgagee in possession or have a receiver appointed at a later date.

10.   Plaintiff avers that in addition to persons designated by name herein, there are or may be other persons who are interested in this action who have or claim some right, title interest or lien on the property. The name of each such other person is unknown to Plaintiff and on diligent inquiry cannot be ascertained. As such, these party defendants are known as Unknown Owners and Unknown Tenants.

11.   Plaintiff avers that in addition to persons designated by name herein, there are or may be other persons who are interested in this action who have or claim some right, title interest or lien on the property. The name of each such other person is unknown to Plaintiff and on diligent inquiry cannot be ascertained. As such, these party defendants are known as Non-Record Claimants.

Plaintiff requests:

(i)     A judgment to foreclose and sale.
(ii)    A personal judgment for a deficiency, if sought.
(iii)   An order granting possession, if sought.
(iv)    A Judgment for attorneys' fees, costs, and expenses.
(v)     An order granting or waiving a shortened reinstatement and/or redemption period, if sought.
(vi)    An order placing the Mortgagee in possession or appointing a receiver, if sought.
(vii)   Such other relief as this court may deem just and equitable.

## COUNT II – BREACH OF NOTE

12.   Plaintiff re-alleges and re-states paragraphs 1 through 11 of the Complaint as paragraph 12 of Count II.

13.   On February 23, 2012, JES Properties, Inc. (herein "Borrower") executed the Note in favor of Plaintiff in the original amount of $1,880,900.00.

14.     Plaintiff is the holder and owner of the Note. Plaintiff has performed all the obligations on its part to be performed under the Note.

15.     The Note is in default, Borrower having failed to make the April 23, 2014 payment, and each payment thereafter. There is due from the Borrower, as of September 16, 2014 the amount of $1,891,444.54 which includes unpaid principal, interest, late fees and costs.

16.     Interest continues to accrue after September 16, 2014 at the rate of $327.20 per day.

17.     Plaintiff has demanded that Borrower fulfill its obligations under the Note; however, Borrower has refused, and continues to refuse to fulfill its obligations under the Note.

18.     The Note states that Borrower shall pay all court costs and attorneys' fees in the event of a default under the Note to Plaintiff in collecting the sums owed.

WHEREFORE, Plaintiff, BBCN Bank, requests this Court to enter Judgment in its favor and against JES Properties, Inc. in the amount of $1,891,444.54 plus costs, reasonable attorneys' fees and interest from September 16, 2014 through the date of Judgment, and to grant such further or other relief as this Court may deem just or equitable.

### COUNT III – BREACH OF GUARANTY

19.     Plaintiff re-alleges and re-states paragraphs 1 through 6 and 12 through 18 as paragraph 19 of Count III.

20.     On or about February 23, 2012, Jung Kak Suh ("Guarantor") executed a Commercial Guaranty ("Guaranty") in favor of Plaintiff, by which he promised and undertook to be answerable for payment of the promissory Note from Borrower to BBCN Bank in the full amount of $1,880,900.00. A true and correct copy of the Guaranty is

attached hereto as "**Exhibit C**".

21.     Pursuant to the Guaranty, Guarantor is liable for all attorneys' fees and expenses incurred by Plaintiff in pursuing its rights and remedies under the Note and Mortgage.

22.     Plaintiff has performed all the obligations on its part to be performed under the Note.

23.     Despite demand for payment, Guarantor has failed or refused to pay the amounts due and owing pursuant to the Note.

24.     By reasons of the obligations under the Guaranty, Guarantor is indebted to Plaintiff, as of September 16, 2014, in the sum of $1,891,444.54, plus interest, attorneys' fees, and costs incurred in this litigation.  Interest accrues after September 16, 2014 at the rate of $327.20 per day.

WHEREFORE, Plaintiff, BBCN Bank, requests this Court to enter Judgment in its favor and against Jung Kak Suh in the amount of $1,891,444.54 plus costs, reasonable attorneys' fees and interest from September 16, 2014 through the date of Judgment, and to grant such further or other relief as this Court may deem just or equitable.


ASHEN | FAULKNER,


BY:/s/ Richard Springer
     Richard N. Springer
     Attorney for Plaintiff
     217 N. Jefferson St., Ste. 601
     Chicago, IL  60661
     (312) 655-0800
     ARDC No. 6284049

10/3

Image# 048517630014 Type: MTG
Recorded: 03/14/2012 at 03:32:12 PM
Receipt#: 2012-00014916
Page 1 of 14
Fees: $49.00
IL Rental Housing Fund: $10.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder
File 6830076

**WHEN RECORDED MAIL TO:**
BBCN BANK
LOAN SERVICING CENTER
3435 Wilshire Blvd., #700
Los Angeles, CA 90010

**SEND TAX NOTICES TO:**
JES PROPERTIES, INC.
2411-2425 GRAND AVENUE
WAUKEGAN, IL 60085

**FOR RECORDER'S USE ONLY**

This Mortgage prepared by:
LOAN SERVICING DEPARTMENT
BBCN BANK
5520 NORTH LINCOLN AVENUE
CHICAGO, IL 60625



*0000000000051649010745022320012*

# MORTGAGE

**MAXIMUM LIEN.** At no time shall the principal amount of indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed the note amount of $1,880,900.00.

**THIS MORTGAGE** dated February 23, 2012, is made and executed between JES PROPERTIES, INC. (referred to below as "Grantor") and BBCN BANK, whose address is 5520 NORTH LINCOLN AVENUE, CHICAGO, IL 60625 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages, warrants, and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in LAKE County, State of Illinois:

See EXHIBIT "A", which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 2411-2425 GRAND AVENUE, WAUKEGAN, IL 60085. The Real Property tax identification number is 08-20-101-025.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform

**FIDELITY NATIONAL TITLE** 50005340



**MORGAGE**

Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

    **Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

    **Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

    **Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

    **Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

| | **MORTGAGE** | |
|---|---|---|
| Loan No: 5164901 | **(Continued)** | Page 3 |

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Illinois law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $25,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $25,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related

**MORTGAGE**

Loan No: 5164901            **(Continued)**            Page 5

Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in

**MORTGAGE**
**(Continued)**

addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby

## MORTGAGE
### (Continued)

irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Grantor, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Grantor's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Grantor), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Mortgage and this Mortgage shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Mortgage or of any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Mortgage.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor

or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency

**MORTGAGE**
**(Continued)**

Loan No: 5164901          Page 9

remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be

**MORTGAGE**
**(Continued)**

Loan No: 5164901                                                                                    Page **10**

charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law. This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Illinois.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of COOK County, State of Illinois.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury. All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural,

and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means JES PROPERTIES, INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means JES PROPERTIES, INC..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means BBCN BANK, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated February 23, 2012, **in the original principal amount of $1,880,900.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The interest rate on the Note is a variable interest rate based upon an index. The index currently is 3.250% per annum. Payments on the Note are to be made in accordance with the following payment schedule: in 59 regular payments of $12,809.59 each and one irregular last payment estimated at $1,718,614.57. Grantor's first payment is due March 23, 2012, and all subsequent payments are due on the same day of each month after that. Grantor's final payment will be due on February 23, 2017, and will

|  | MORTGAGE |  |
|---|---|---|
| Loan No: 5164901 | (Continued) | Page 12 |

be for all principal and all accrued interest not yet paid. Payments include principal and interest. If the index increases, the payments tied to the index, and therefore the total amount secured hereunder, will increase. Any variable interest rate tied to the index shall be calculated as of, and shall begin on, the commencement date indicated for the applicable payment stream. NOTICE: Under no circumstances shall the interest rate on this Mortgage be less than 6.500% per annum or more than the maximum rate allowed by applicable law. The maturity date of the Note is February 23, 2017. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.**

**GRANTOR:**

**JES PROPERTIES, INC.**

By: _____

    JUNG KAK SUH, President & Secretary of JES PROPERTIES, INC.

Loan No: 5164901

**MORGAGE**
**(Continued)**

Page 13

## CORPORATE ACKNOWLEDGMENT

STATE OF ___*Illinois*___ )
                                          ) SS
COUNTY OF ___*Cook*___ )

On this ___*28th*___ day of ___*February*___, ___*2012*___ before me, the undersigned Notary Public, personally appeared **JUNG KAK SUH, President & Secretary of JES PROPERTIES, INC.** , and known to me to be an authorized agent of the corporation that executed the Mortgage and acknowledged the Mortgage to be the free and voluntary act and deed of the corporation, by authority of its Bylaws or by resolution of its board of directors, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Mortgage and in fact executed the Mortgage on behalf of the corporation.

By_____     Residing at ___*Cook*___

Notary Public in and for the State of ___*Illinois*___

My commission expires ___*4/29/2012*___

OFFICIAL SEAL
JAY KONG
Notary Public - State of Illinois
My Commission Expires Apr 29, 2012

LASER PRO Lending, Ver. 5.58.20.001 Copr. Harland Financial Solutions, Inc. 1997, 2012. All Rights Reserved. - IL L:\CFI\LPL\G03.FC TR-17614 PR-39

*00000000005164901095502232012*

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,880,900.00 | 02-23-2012 | 02-23-2017 | 5164901 | 76 / 71 | | 1004 | *AC* |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** JES PROPERTIES, INC.
2411-2425 GRAND AVENUE
WAUKEGAN, IL 60085

**Lender:** BBCN BANK
CHICAGO OFFICE
5520 NORTH LINCOLN AVENUE
CHICAGO, IL 60625

---

**Principal Amount: $1,880,900.00**                    **Date of Note: February 23, 2012**

**PROMISE TO PAY.** JES PROPERTIES, INC. ("Borrower") promises to pay to BBCN BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Eight Hundred Eighty Thousand Nine Hundred & 00/100 Dollars ($1,880,900.00), together with interest on the unpaid principal balance from February 23, 2012, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 59 regular payments of $12,809.59 each and one irregular last payment estimated at $1,718,614.57. Borrower's first payment is due March 23, 2012, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on February 23, 2017, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the "PRIME RATE" AS PUBLISHED IN THE WALL STREET JOURNAL "MONEY RATES" TABLE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each daily. Borrower understands that Lender may make loans based on other rates as well. **The index currently is 3.250% per annum.** Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage point over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 6.500%. NOTICE: Under no circumstances will the interest rate on this Note be less than 6.500% per annum or more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT PENALTY.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: Prepayment fee shall be imposed as follows:

**(1)** If Borrower pays off the loan during the first year from the initial disbursement date, 3% of the outstanding principal balance;

**(2)** If Borrower pays off the loan during the second year from the initial disbursement date, 2% of the outstanding principal balance;

**(3)** If Borrower pays off the loan during the third year from the initial disbursement date, 1% of the outstanding principal balance. Prepayment fee will be waived in case of sale of property. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: BBCN BANK, 3435 WILSHIRE BOULEVARD, SUITE 700 LOS ANGELES, CA 90010.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $10.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in

# PROMISSORY NOTE
## (Continued)

any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Illinois.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of COOK County, State of Illinois.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $15.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: a Mortgage dated February 23, 2012, to Lender on real property located in LAKE County, State of Illinois.

**BALLOON NOTE AND PAYMENT AMORTIZATION .** THIS NOTE IS A BALLOON NOTE AND AMORTIZED OVER A PERIOD OF 300 MONTHS. .

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: BBCN BANK 3435 WILSHIRE BLVD., #700 LOS ANGELES, CA 90010.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**ILLINOIS INSURANCE NOTICE.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral,

**PROMISSORY NOTE**
**(Continued)**

Loan No: 5164901                                                      Page 3

Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

JES PROPERTIES, INC.

By: _____
JUNG KAK SUH, President & Secretary of JES PROPERTIES, INC.

LASER PRO Lending, Ver. 6.60.20.001 Copr. Harland Financial Solutions, Inc. 1997, 2012. All Rights Reserved. - IL L:\CFI\LPL\D20.FC TR-17514 PR-39

*00000000000516490102200223200012*

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
|           |           |          |         | 76 / 71     |         | 1004    |          |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** JES PROPERTIES, INC.
2411-2425 GRAND AVENUE
WAUKEGAN, IL  60085

**Lender:** BBCN BANK
CHICAGO OFFICE
5520 NORTH LINCOLN AVENUE
CHICAGO, IL  60625

**Guarantor:** JUNG KAK SUH
1438 VOLTZ ROAD
NORTHBROOK, IL  60062

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than thirty (30) days after the end of each fiscal year, Guarantor's balance sheet and income statement for the year ended, prepared by Guarantor in form satisfactory to Lender.

## COMMERCIAL GUARANTY
### (Continued)

**Tax Returns.** As soon as available, but in no event later than thirty (30) days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns, prepared by a tax professional satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**CONFESSION OF JUDGMENT.** Guarantor hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Guarantor for the unpaid amount of this Guaranty as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Guaranty, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Guarantor waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Guaranty have been paid in full. Guarantor hereby waives and release any and all claims or causes of action which Guarantor might have against any attorney acting under the terms of authority which Guarantor has granted herein arising out of or connected with the confession of judgment hereunder.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

## COMMERCIAL GUARANTY
### (Continued)

**Loan No: 5164901**                                                                                                       **Page 3**

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of COOK County, State of Illinois.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**THE FOLLOWING NOTICE IS REQUIRED BY ILLINOIS LAW:** Unless Guarantor provides Lender with evidence of the insurance coverage required by Guarantor's agreement with Lender, Lender may purchase insurance at Guarantor's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Guarantor's interests. The coverage that Lender purchases may not pay any claim that Guarantor makes or any claim that is made against Guarantor in connection with the collateral. Guarantor may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Guarantor has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Guarantor will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Guarantor's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Guarantor may be able to obtain on Guarantor's own.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means JES PROPERTIES, INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation JUNG KAK SUH, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means BBCN BANK, its successors and assigns.

**Note.** The word "Note" means the promissory note dated February 23, 2012, **in the original principal amount of $1,880,900.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

## COMMERCIAL GUARANTY
### (Continued)

| Loan No: 5164901 | Page 4 |
|---|---|

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED FEBRUARY 23, 2012.

GUARANTOR:

X _____
JUNG KAK SUH

LASER PRO Lending, Ver. 5.58.20.001 Copr. Harland Financial Solutions, Inc. 1997, 2012. All Rights Reserved. - IL LXCFRLPLX20.FC TR-17614 PR-19

ClientCaseID:
Law Firm ID:  ASHEN



*435419A*

CaseReturnDate:  11/9/14

**Affidavit of  Special Process Server**

# UNITED STATES DISTRICT COURT

Case Number **14CV07737**

I, MARK E. EDDS

FIRST DULY SWORN ON OATH STATES THAT I AM OVER 18 YEARS OF AGE AND NOT A PARTY TO THIS SUIT AND IS A REGISTERED EMPLOYEE OF  PRIVATE DETECTIVE AGENCY #117-001292 STERN PROCESS & INVESTIGATION LLC 205 W. RANDOLPH ST.  CHICAGO IL 60606 LICENSED BY THE ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION.

## PERSONAL SERVICE

THAT I SERVED THE WITHIN     SUMMONS AND COMPLAINT

ON THE WITHIN NAMED  DEFENDANT      JUNG K. SUH
BY LEAVING A COPY OF EACH WITH THE SAID DEFENDANT PERSONALLY     10/17/14

That the sex, race and approximate age of the person whom I left the document(s) are as follow:

| | | | |
|---|---|---|---|
| Sex  MALE | Race  ASIAN | Age  50s | |
| Height  5'6" | Build  AVERAGE | Hair  BLACK | |

LOCATION OF SERVICE     **1438  VOLTZ RD.**
**NORTHBROOK, IL, 60062**

Date Of Service     10/17/14           Time of Service   8:04 PM

                                          MARK E. EDDS                         10/21/2014
                                          **Special Process Server**
                                          P.E.R.C.#129-317476

Under penalties of perjury as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statement are true and correct, except as to matters therein stated to be on information and belief and such matters the undersigned certifies as aforesaid that he/she verily believes same to be true.

                                          MARK E. EDDS                         10/21/2014

| Case<br>14-cv-07737<br><br>Exhibit<br>B |
|---|

ClientCaseID:

Law Firm ID:    ASHEN


\* 4 3 5 4 1 9 A \*

CaseReturnDate:  11/9/14

**Affidavit of  Special Process Server**

# UNITED STATES DISTRICT COURT

Case Number **14CV07737**

I, MARK E. EDDS

FIRST DULY SWORN ON OATH STATES THAT I AM OVER 18 YEARS OF AGE AND NOT A PARTY TO THIS SUIT AND IS A REGISTERED EMPLOYEE OF  PRIVATE DETECTIVE AGENCY  #117-001292 STERN PROCESS & INVESTIGATION LLC 205 W. RANDOLPH ST. CHICAGO IL 60606 LICENSED BY THE ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION.

## CORPORATE SERVICE

THAT I SERVED THE WITHIN    **SUMMONS AND COMPLAINT**

ON THE WITHIN NAMED  DEFENDANT  **JES Properties, Inc.**

PERSON SERVED **Jung K. Suh - registered agent**

BY LEAVING A COPY OF EACH WITH THE SAID DEFENDANT ON **10/17/14**

Jung K. Suh - registered agent is authorized to accept service.

That the sex, race and approximate age of the person whom I left the document(s) are as follow:

| | | | | | |
|---|---|---|---|---|---|
| **Sex** | MALE | **Race** | ASIAN | **Age** | 50s |
| **Height** | 5'6" | **Build** | AVERAGE | **Hair** | BLACK |

LOCATION OF SERVICE    **1438   VOLTZ RD.**
**NORTHBROOK, IL, 60062**

Date Of Service    **10/17/14**          Time of Service    **8:04 PM**

MARK E. EDDS                                        10/21/2014

**Special Process Server**

P.E.R.C.#129-317476

Under penalties of perjury as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statement are true and correct, except as to matters therein stated to be on information and belief and such matters the undersigned certifies as aforesaid that he/she verily believes same to be true.

MARK E. EDDS                                        10/21/2014

Total:    $55.00

MR

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

BBCN Bank, )
         ) No. 14-cv-07737
               Plaintiff, )
         ) Assigned Judge: Honorable Virginia M. Kendall
         v. )
         ) Property:     2411-2425 Grand Avenue
         )               Waukegan, IL 60085
JES Properties Inc., Jung Kak Suh )
Unknown Owners, Unknown Tenants, and )        Commercial
Non-record Claimants )
         )
            Defendant(s) )

## AMENDED JUDGMENT OF FORECLOSURE AND SALE

This cause having been heard before this Court for Prove-up of Judgment, the Court having considered the pleadings, the evidence presented and the arguments of counsel and being fully advised on the premises and finds as follows:

1. On January 27, 2014, this Court entered an Order granting Plaintiff's Motion for Default Judgment and entered a Judgment of Foreclosure against defendants JES Properties, Inc. and Jung Kak Suh. On March 30, 2015, defendants JES Properties, Inc. and Jung Kak Suh presented their Motion to Set Aside Judgment. The Motion to Set Aside Judgment was denied, and the judgment was not vacated, however the judgment amount, as set forth in the January 27, 2014 was vacated. This Honorable Court set the matter for a prove-up hearing on April 9, 2015. The Court having granted both sides the opportunity to present evidence hereby enters this Amended Judgment of Foreclosure *Nunc Pro Tunc.*

2. **Jurisdiction:** This Court has jurisdiction of the parties and the subject matter of this action.

3. **Property:** The Mortgage described in the Complaint, executed by JES Properties Inc., and hereby foreclosed appears of record in the Office of the Lake County Recorder as Document Number 6830076 and is described as follows:

LOT 1 IN MUELLER'S RESUBDIVISION OF BLOCK 7 IN DOUGLAS NURSERY ADDITION, BEING A RESUBDIVISION IN THE NORTHWEST 1/4 OF SECTION 20, TOWNSHIP 45 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED AUGUST 4, 2004 AS DOCUMENT 5616365 IN THE OFFICE OF THE RECORDER OF DEEDS, IN LAKE COUNTY, CITY OF WAUKEGAN, ILLINOIS.

2015 APR -9 PM 2: 16

```
Case
14-cv-07737

Exhibit
C
```

**EXCEPT** THE FOLLOWING
THE NORTH 125 FEET OF THE WEST 125 FEET OF LOT 1 IN MUELLER'S RESUBDIVISION OF PART OF BLOCK 7 IN DOUGLAS NURSERY ADDITON, BEING A SUBDIVISION OF THE NORTHWEST QUARTER OF SECTION 20, TOWNSHIP 45 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT OF RESUBDIVISION RECORDED AUGUST 4, 2004 AS DOCUMENT NUMBER 5616365, IN LAKE COUNTY, ILLINOIS.

**ALSO EXCEPT** THAT PART OF LOT 1 IN MUELLER'S RESUBDIVISION, OF BLOCK 7 IN DOUGLAS NURSERY ADDITION, BEING A RESUBDIVISION IN THE NORTHWEST 1/4 OF SECTION 20, TOWNSHIP 45 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED AUGUST 4, 2004 AS DOCUMENT 5616365 IN THE OFFICE OF THE RECORDER OF DEEDS BOUNDED BY A LINE DESCRIBED AS FOLLOWS TO-WIT; COMMENCING AT THE SOUTHEAST CORNER OF SAID LOT 1 AS THE PLACE OF BEGINNING; THENCE SOUTH 89 DEGREES, 59 MINUTES 32 SECONDS WEST ALONG THE SOUTH LINE OF SAID LOT 1, A DISTANCE OF 209.26 FEET; THENCE NORTH 00 DEGREES 00 SECONDS EAST, ALONG THE EAST FACE OF THE EXISTING BUILDING, A DISTANCE OF 330.27 FEET, TO THE NORTH LINE OF SAID LOT 1; THENCE NORTH 90 DEGREES 00 MINUTES EAST, ALONG THE NORTH LINE OF SAID LOT 1, A DISTANCE OF 90.48 FEET, TO THE NORTHEAST CORNER OF SAID LOT 1; THENCE SOUTHERLY AND EASTERLY ALONG THE EASTERLY LINE OF SAID LOT 1, BEING A CURVED LINE HAVING A RADIUS OF 465.55 FEET AND BEING CONCAVE NORTHEASTERLY, A DISTANCE OF 278.9 FEET (RECORD), 279.34 FEET (MEASURE) TO A POINT OF REVERSE CURVATURE; THENCE SOUTHERLY AND WESTERLY, ALONG THE EASTERLY LINE OF SAID LOT 1, BEING A CURVED LINE HAVING A RADIUS OF 405.55 FEET AND BEING CONCAVE SOUTHWESTERLY, A DISTANCE OF 76.6 FEET (RECORD) 76.87 FEET (MEASURE) TO THE SOUTHEAST CORNER OF SAID LOT 1 AND PLACE OF BEGINNING, ALL IN THE CITY OF WAUKEGAN, LAKE COUNTY, ILLINOIS.

Commonly Known As:        2411-2425 Grand Avenue, Waukegan, IL 60085
Permanent Identification No.:    08-20-101-025

4.    **Judgment of Foreclosure and Sale is entered in favor of Plaintiff.**

5. **Material Allegations**: All material allegations of the Complaint are true and proven, and the allegations are supported by the evidence presented. By virtue of the Note and Mortgage there is due to the Plaintiff, as of <u>April 9, 2015</u>, the following amounts:

| | |
|---|---|
| Principal Balance | $1,812,205.09 |
| Interest to Mar 31, 2015 | $121,719.77 |
| *Per diem* to April 9, 2015 | $2,944.8 |
| Real Estate Taxes | $287,696.36 |
| Late Charges | $7,045.17 |
| Force Placed Insurance | $1,018.69 |
| Sub-Total | $2,232,629.88 |
| | |
| Costs | $1,176.60 |
| Attorney's Fees | $5,918.75 |
| **Total** | **$2,239,725.23** |
| *Per diem* | $327.20 |

6. JES Properties Inc. and Jung Kak Suh are liable for all amounts owed thereunder.

7. **Costs and Fees:** Under the provisions of the Mortgage herein sought to be foreclosed, the costs of the foreclosure are an additional indebtedness for which the Plaintiff should be reimbursed, the Court having reviewed said costs and finding that they are the usual, customary and reasonable expenses incurred in like causes, the Court orders that such expenses are hereby allowed to the Plaintiff.

8. Pursuant to LR54.4, this Court has approved the portion of the lien attributable to attorneys' fees only for purposes of the foreclosure sale, and not for purposes of determining the amount required to be paid personally by defendant in the event of redemption by defendant, or a deficiency judgment, or otherwise. In the event of redemption by defendant or for purposes of any personal deficiency judgment, this court reserves the right to review the amount of attorneys' fees to be included for either purpose. Plaintiff's counsel is required to notify defendant of the provisions of this paragraph.

9. Advances made in order to protect the lien of the judgment and preserve the real estate, such as but not limited to property inspections, real estate taxes or assessments, property maintenance and insurance premiums, incurred by the Plaintiff after the date this judgment is entered and prior to the foreclosure sale shall become an additional indebtedness secured by the judgment lien and bear interest from the date of the advance at the mortgage rate of interest pursuant to 28 U.S. Code § 1961.

10. **Mortgagor's Rights:** Mortgagor was served with summons on October 17, 2014.
    a. The mortgaged real estate is commercial property.
    b. **Right of redemption expires April 17, 2015.**
    c. The Mortgagors are NOT the owners of the right of reinstatement. The right of reinstatement expired January 15, 2015.

3

11. The Mortgage constitutes a valid lien upon the real estate which is prior, paramount and superior to the rights and interests of all other parties and non-record claimants in and to the property. Upon entry herein, the rights of the Plaintiff shall be secured by a lien upon the mortgaged real estate, which lien shall have the same priority as the Mortgage to which the judgment relates. The rights and interests of all other parties and non-record claimants are subject, subordinate and inferior to the rights of the Plaintiff herein.

12. **Notice:** The attorneys for the Plaintiff shall give public notice of the time, place and terms of sale. The notice of sale shall be published at least three (3) consecutive calendar weeks (Sunday through Saturday), once each week, the first such notice to be published not more than forty five (45) days prior to the sale, the last such notice to be published not less than seven (7) days prior to the sale by:

   a. advertisements in a newspaper circulated to the general public in the county in which the real estate is located, in the section of that newspaper where legal notices are commonly placed; and

   b. separate advertisements in the section of such newspaper, which may NOT be the same newspaper used for section (A), in which the real estate other than real estate being sold as part of legal proceedings is commonly advertised to the general public, there being no requirement for the second advertisement to include a legal description; and

   c. such other publications as may be further ordered by the court.

13. Said public notice shall include the information required pursuant to 735 ILCS 5/15-1507 (c)(1), but an immaterial error in the information shall not invalidate the legal effect of the public notice.

14. Notice of sale shall also be given by the attorneys for Plaintiff to all parties in the action who have appeared and not have heretofore been found by the Court to be in default for failure to plead. Such notice shall be given in the manner provided in the applicable rules of court for service of papers other than process and complaint, not more than forty five (45) days nor less than seven (7) days prior to the date of sale. After notice is given as required in this section, a copy thereof shall be filed in the office of the clerk of this Court together with a certificate of counsel or other proof that notice has been served in compliance with this section.

15. The notice of sale may be given prior to the expiration of the redemption period previously determined.

16. The Judicial Sales Corporation may adjourn or continue the sale subject to the notice and advertisement requirements of 735 ILCS 5/15 1507(c)(4).

17. **Sale:** The premises herein legally described shall be sold by the Judicial Sales Corporation at the place designated by the Judicial Sales Corporation.

18.    The Judicial Sales Corporation shall offer for sale the real estate described herein, with all improvements, fixtures and appurtenances thereto; or so much of said real estate which may be divisible and sold separately without material injury to the parties in interest. The real estate shall be sold at public auction to the highest bidder for cash requiring payment not less than twenty-five (25%) percent at the time of sale and the balance within twenty four (24) hours plus interest at the statutory judgment rate on any unpaid portion of the sale price from the date of sale to the date of payment. All payments of the amount bid shall be in cash or certified funds payable to the sheriff. In the event the bidder fails to comply with the terms of the purchase as required, then upon demand by the Plaintiff in a notice served on the sheriff and on the bidder, the funds submitted shall be forfeited to the Plaintiff or the Plaintiff has the option to have the property sold to the next highest bidder. In the event there is a third party bidder other than the Plaintiff, the sheriff shall obtain the name, address (other than a post office box), and telephone number of that bidder. Notice by regular mail to the address given by the bidder and to the officer conducting the sale shall be deemed to be sufficient notification by the Plaintiff to exercise its option to forfeit the funds. The subject property is offered for sale without any representation as to quality or quantity of title and without recourse to Plaintiff.

19.    The Plaintiff or any of the parties to this cause may become the purchasers at such sale. If Plaintiff is the successful bidder at said sale, the amount due the Plaintiff, plus all costs, advances and fees together with interest incurred between entry of judgment and confirmation of sale shall be taken as a credit on its bid.

20.    At the sale of the mortgaged real estate, the Judicial Sales Corporation shall give to the purchaser a receipt of sale. The receipt shall describe the real estate purchased and shall show the amount paid or to be paid therefore. An additional receipt shall be given at the time of the subsequent payment. Upon the sale of the mortgaged real estate, the Judicial Sales Corporation may give and record a certificate of sale in accordance with 735 ILCS 5/12 119 and 12-121. The certificate of sale shall be freely assignable.

21.    **Proceeds:** Out of the proceeds of said sale, the Judicial Sales Corporation shall make distribution in the following order of priority:
    a.    The Judicial Sales Corporation shall be paid its reasonable sale expenses;
    b.    To the Plaintiff or its attorney, the amounts set forth in paragraph 5 of this Judgment plus any additional costs of sale with statutory interest from the date hereof.
    c.    To the Plaintiff or its attorney, the reasonable expenses of securing possession before sale, holding, maintaining and preparing the real estate for sale, including payment of taxes and other governmental charges, premiums on hazard and liability insurance, receiver's and management fees and to the extent provided for in the mortgage or other recorded agreement and not prohibited by law, reasonable attorneys' fees, payments made pursuant to 735 ILCS 5/15-1505 and other legal expenses incurred by the mortgagee;

    d.   If after payment of the above items there shall be a remainder, the Judicial Sales Corporation shall hold this surplus subject to the further order of this Court; If the remainder of the proceeds shall not be sufficient to pay the above described amounts and interest, the Judicial Sales Corporation shall then specify the amount of the deficiency in its report of sale. *JES Properties Inc. and Jung Kak Suh* shall be liable for any deficiency judgment described in the report of sale.

    e.   In the case of a surplus (a) the selling officer shall immediately turn over surplus funds to the Clerk of the Court; and (b) counsel for movant shall notify the mortgagor, by letter, of the surplus, specifying that the funds may be obtained by petition and notifying the mortgagor(s) as to the procedures for doing so. Counsel for the movant must include the official court surplus request form with the notifications.

22.   **Post-sale and Confirmation:** The Judicial Sales Corporation shall promptly make a report of sale to the Court. Upon motion and notice in accordance with Court rules applicable to motions generally, the Court shall then enter an order confirming the sale, which confirmation order may also: (a) approve the mortgagee's fees, costs and additional advances arising between the entry of the judgment of foreclosure and the confirmation hearing; (b) determine the priority of the judgments of parties who deferred proving the priority pursuant to 735 ILCS 5/15 1506(h), but the Court shall not defer confirming the sale pending the determination of such priority;

23.   Upon confirmation of the sale and payment of the purchase price and any other amount required to be paid by purchaser at sale, the Judicial Sales Corporation shall execute and deliver to the holder of the certificate of sale, or if no certificate has been issued, then to the holder of the receipt of sale or the assignee thereof, a deed sufficient to convey title. Said conveyance shall be an entire bar to all claims to the parties to the foreclosure and all persons claiming thereunder.

24.   Thereupon, the grantee in such deed, or its legal representative or assigns shall be let into possession of the premises. That the parties hereto who shall be in possession of said premises, or any part thereof, including leaseholders or any person who may have come into such possession under them or any of them, since the inception of the mortgage or commencement of this suit, shall upon presentment of said deed, surrender possession of said premises to said grantee, its representative or assigns, and in default of so doing, an order of possession shall issue.

25.   **A copy of this Judgment shall be mailed to all defendants within 7 days from the entry of the judgment.**

DATED:    April 9, 2015          ENTERED:

Ashen | Faulkner,
217 N. Jefferson St., Suite 601
Chicago, Illinois 60661
312.655.0800 / Atty No.: 6314304

Honorable Judge Virginia M. Kendall



# BBCN Bank

The New Name of Center Bank and Nara Bank

May 21, 2015

Greater Metropolitan Title, LLC
2340 S. Arlington Heights Road, Suite 203
Arlington Heights, IL 60005

Re:  JES Properties, Inc. ("Borrower")
     Jung K. Suh ("Guarantor")
     (All above reference parties are sometimes referred as "Obligors" hereafter)

     Loan Number:        5164901 ("Loan")
     Property Address:   2411 Grand Ave. Waukegan, IL 60085 ("Property")
     Title File No.:     15-0441

          Subject:      **Release for Consideration**

To Whom It May Concern:

     This shall constitute BBCN Bank's ("Bank") demand regarding the Loan. Loan is secured by mortgage dated February 23, 2012, recorded on or about March 14, 2012 as document No. 048517630014, which mortgage recorded in County of Lake in favor of Bank encumbering the Property ("Mortgage") including related documents.

     As of May 6, 2015, total amount due, owing and payable on Loan is no less than $1,954,030.30 consisting of $1,812,205.09 principal balance plus $133,499.10 interest balance and $8,326.11 current late charges, plus accrued expenses.

     On April 16, 2015, the Borrower has entered into an Agreement for Purchase and Sale of Real Estate for the Sale of the Property for $1,200,000.00 ("Sale").

     Bank understands that Borrower has requested that Bank accepts $1,004,969.52 or net proceeds due seller from the Sale, whichever is greater ("Consideration") as consideration for the release of the Mortgage to facilitate the Sale. There shall be no moneys paid to the Obligor from the Sale. Bank is willing to accommodate Borrower's request, however, Bank's release of subject Mortgage, Loan shall be in full reservation of Bank's rights and remedies as to the remaining deficiency balance of the Loan as to the Obligors, and all security for the Loan. Please have the Obligors counter-execute this letter, as set forth below.

Please wire funds to the following account:

**BBCN Bank**
**Attn: Special Assets Dept / Benjamin Goo**
**3731 Wilshire Blvd., #1000**
**Los Angeles, CA 90010**

<div style="border:1px solid black">

**Case
14-cv-07737**

**Exhibit
D**

</div>

This demand is valid through May 28, 2015. If proceeds are not received by the Bank by 5:00 p.m. on May 28, 2015, this demand shall be null and void.

Please contact Benjamin Goo at 213-235-3253 or e-mail Benjamin.goo@bbcnbank.com with any questions you may have.

Sincerely,

Ki Wook Lee
VP & Team Leader
Special Assets Department

Acknowledged and Agreed:

(Borrower)
JES Properties, Inc.

Jung K. Suh, President & Secretary

(Guarantor)

Jung K. Suh, an individual

A. SETTLEMENT STATEMENT (HUD-1)

☆ OMB No. 2502-0265

| B. | | TYPE | OF | | LOAN | |
|---|---|---|---|---|---|---|
| 1. ☐ FHA | 2. ☐ | | FHMA | 3. ☐ | CONV. UNINS. | |
| 4. ☐ VA | 5. ☐ | CONV. INS. | | | | |

6. FILE NUMBER: 15-0441  
7. LOAN NUMBER

8. MORTGAGE INS. CASE NO.:

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME & ADDRESS OF BORROWER: 2411 Waukegan, LLC

E. NAME & ADDRESS OF SELLER: JES Properties, Inc., an Illinois corporation

F. NAME & ADDRESS OF LENDER: NorStates Bank, 1601 N. Lewis Avenue, Waukegan, IL 60079

G. PROPERTY LOCATION: 2411 Grand Ave, Waukegan, IL 60085

H. SETTLEMENT AGENT: Greater Metropolitan Title  
PLACE OF SETTLEMENT: 175 East Hawthorn Parkway, Suite 135, Vernon Hills, IL 60061 (847) 281-9332

I. SETTLEMENT DATE: 5/28/2015    DISBURSEMENT DATE: 5/28/2015

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | **400. Gross Amount Due To Seller:** | |
| 101. Contract sales price | 1,200,000.00 | 401. Contract sales price | 1,200,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 114,988.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| | | | |
| **Adjustments For Items Paid By Seller In Advance:** | | **Adjustments For Items Paid By Seller In Advance:** | |
| 106. City/town taxes     to | | 406. City/town taxes     to | |
| 107. County taxes     to | | 407. County taxes     to | |
| 108. Assessments     to | | 408. Assessments     to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| **120. Gross Amount Due From Borrower:** | 1,314,988.00 | **420. Gross Amount Due To Seller:** | 1,200,000.00 |
| **200. Amounts Paid By Or In Behalf Of Borrower:** | | **500. Reductions In Amount Due To Seller:** | |
| 201. Deposit or earnest money | 50,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 900,000.00 | 502. Settlement charges to seller (line 1400) | 117,751.56 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff 1st Mtg. Ln. BBCN Bank | 1,004,969.52 |
| 205. | | 505. Payoff 2nd Mtg. Ln. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| | | | |
| **Adjustments For Items Unpaid By Seller:** | | **Adjustments For Items Unpaid By Seller:** | |
| 210. City/town taxes     to | | 510. City/town taxes     to | |
| 211. County taxes  07/01/14  to  12/31/14 | 42,673.56 | 511. County taxes  07/01/14  to  12/31/14 | 42,673.56 |
| 212. Assessments | | 512. Assessments     to | |
| 213. County taxes  1/01/2015 to 5/28/2015 | 34,605.36 | 513. County taxes 1/01/2015 to 5/28/2015 | 34,605.36 |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower:** | 1,027,278.92 | **520. Total Reductions In Amount Due Seller:** | 1,200,000.00 |
| **300. Cash At Settlement From/To Borrower:** | | **600. Cash At Settlement From/To Seller:** | |
| 301. Gross amount due from borrower (line 120) | 1,314,988.00 | 601. Gross amount due to seller (line 420) | 1,200,000. |
| 302. Less amount paid by/for borrower (line 220) | 1,027,278.92 | 602. Less reductions in amount due seller (line 520) | 1,200,000. |
| 303. Cash (X FROM) (☐ TO) Borrower: | 287,709.08 | 603. Cash (☐ TO) (☐ FROM) Seller: | 0. |

Previous Edition Is Obsolete  
Form No. 1581  
3/86

Page 1 of 3

SB-4-3538-000-  
HUD-1 (3-8  
RESPA, HB 4305

Case  
14-cv-07737

Exhibit  
E

| L. | | | Escrow: 15-0441 | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|---|---|
| **700. Total Sales/Broker's Commission:** | | | | | |
| Based On Price $ | 1,200,000.00 | @ | % = | | |
| **Division of Commission (line 700) As Follows:** | | | | | |
| 701. $ | 60,000.00 | to | Mega USA Properties, Inc. | | |
| 702. $ | | to | | | |
| 703. Commission paid at settlement | | | | | 60,000.00 |
| 704. | | | | | |
| **800. Items Payable In Connection With Loan:** | | | | | |
| 801. Loan Origination fee | % | NorStates Bank | | 9,000.00 | |
| 802. Loan Discount | % | | | | |
| 803. Appraisal fee to: Perry Appraisal Service | | | | 1,200.00 | |
| 804. Credit report to: | | | | | |
| 805. Lender's inspection fee | | | | | |
| 806. Mortgage insurance application fee to | | | | | |
| 807. Assumption fee | | | | | |
| 808. Environmental Fee To: Aspen Environmental Services, Inc. | | | | 1,550.00 | |
| 809. Required Deposit To: NorStates Bank | | | | 100,000.00 | |
| 810. Flood Determination To: NorStates Bank | | | | 20.00 | |
| 811. Document Preparation To: NorStates Bank | | | | 250.00 | |
| 812. | | | | | |
| 813. | | | | | |
| 814. | | | | | |
| 815. | | | | | |
| 816. | | | | | |
| 817. | | | | | |
| 818. | | | | | |
| 819. | | | | | |
| 820. | | | | | |
| 821. | | | | | |
| **900. Items Required By Lender To Be Paid In Advance:** | | | | | |
| 901. Interest from | to | @$ | /day | (0 days) | |
| 902. Mortgage insurance premium for | mo. to | | | | |
| 903. Hazard insurance premium for | yrs. to | | | | |
| 904. Flood insurance premium for | yrs. to | | | | |
| 905. | | | | | |
| 906. | | | | | |
| **1000. Reserves Deposited With Lender:** | | | | | |
| 1001. Hazard insurance | 0 months @ $ | 0.00 per month | | | |
| 1002. Mortgage insurance | 0 months @ $ | 0.00 per month | | | |
| 1003. City property taxes | 0 months @ $ | 0.00 per month | | | |
| 1004. County property taxes | 0 months @ $ | 0.00 per month | | | |
| 1005. Annual assessments | 0 months @ $ | 0.00 per month | | | |
| 1006. Flood insurance | 0 months @ $ | 0.00 per month | | | |
| 1007. | 0 months @ $ | 0.00 per month | | | |
| 1008. Aggregate Adjustment | | | | | |
| 1009. | | | | | |
| **1100. Title Charges** | | | | | |
| 1101. Settlement or closing fee to Greater Metropolitan Title | | | | 850.00 | 850.00 |
| 1102. Abstract or title search to | | | | | |
| 1103. Title examination to | | | | | |
| 1104. Title insurance binder to | | | | | |
| 1105. Document preparation to | | | | | |
| 1106. Notary fees to | | | | | |
| 1107. Attorney's fees to | | | | | |
| (includes above item Numbers: | | | | ) | |
| 1108. Title insurance to Greater Metropolitan Title | | | | | |
| (includes above item Numbers: | | | | ) | 500.00 | 3,325.00 |
| 1109. Lender's coverage $ 900,000.00 Premium: $500.00 | | | | | |
| 1110. Owner's coverage $ 1,200,000.00 Premium: $3,325.00 | | | | | |
| 1111. Extended Coverage to Greater Metropolitan Title | | | | 250.00 | |
| 1112. IL-Policy Registration Fee to Greater Metropolitan Title | | | | | 3.00 |
| 1113. Assignment of Rents Recording to Lake County Recorder | | | | 48.00 | |
| 1114. Exhibit "A" Attached Hereto | | | | 1,228.00 | 250.00 |
| **1200. Government Recording and Transfer Charges:** | | | | | |
| 1201. Recording fees: Deed $ 39.00 ;Mortgage $ 53.00 ;Releases $ 0.00 | | | | 92.00 | |
| 1202. City/county tax/stamps: Deed $ 600.00 ;Mortgage $ 0.00 | | | | | 600.00 |
| 1203. State tax/Stamps: Deed $ 1,200.00 ;Mortgage $ 0.00 | | | | | 1,200.00 |
| 1204. | | | | | |
| 1205. | | | | | |
| **1300. Additional Settlement Charges:** | | | | | |
| 1301. Survey to Land Surveying Services, Ltd. | | | | | 3,800.00 |
| 1302. Pest inspection to | | | | | |
| 1303. Attorney Fee to Carlson Partners, Ltd. | | | | | |
| 1304. Attorney Fee to IBT Laws, LLC | | | | | 5,000.00 |
| 1305. Water Certificate to Joseph Ghaben | | | | | 50.00 |
| 1306. 1st Installment 2014 Taxes to Lake County Collector | | | | | 42,673.56 |
| 1307. | | | | | |
| 1308. | | | | | |
| **1400. Total Settlement Charge** *(Enter on line 103, Section J - and - line 502, Section K)* | | | | 114,988.00 | 117,751.56 |

SETTLEMENT CHARGES

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrowers/Purchasers

2411 Waukegan, LLC

By:_____
    Joseph Ghaben, General Manager

Sellers

JES Properties, Inc., an Illinois
corporation

By:_____
    Jung K Suh, Grantor

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent:                                                        Date:
    Greater Metropolitan Title

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see:  Title 18 U.S. Code Section 1001 and Section 1010.

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

BBCN Bank,                    )

                                  )     No. 14-cv-07737

               Plaintiff,        )

                                    )     Assigned Judge: Honorable Virginia M. Kendall

           v.                   )     Property:    2411-2425 Grand Avenue

                                    )                     Waukegan, IL 60085

JES Properties Inc., Jung Kak Suh     )

Unknown Owners, Unknown Tenants, and    )    **Commercial**

Non-record Claimants                  )

                                    )

            Defendant(s)     )

---

## AFFIDAVIT OF ALEXANDER WRIGHT

The undersigned being first duly sworn on oath and deposes and states the following:

On June 4, 2015, I performed or caused to be performed a review of the records maintained on

PACER (Public Access to Court Electronic Records) as relates to Jung Kak Suh and JES Properties

Inc.

<u>The review found no evidence of any bankruptcy filing by Jung Kak Suh or JES Properties Inc.</u>

Under penalties provided by law pursuant to Section 1-109 of the Illinois Code of Civil

Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct.

FURTHER AFFIANT SAYETH NOT

                                           Respectfully submitted,

                                           /S/Alexander Wright

                                           **Alexander N. Wright**

                                           Attorney for BBCN Bank

Ashen | Faulkner

217 N. Jefferson St., Suite 601

Chicago, Illinois 60661

312.655.0800 / Atty No.: 6314304

Case
14-cv-07737

Exhibit
F